SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
CASSADY A. ADAMS, CO Bar #48807
Assistant United States Attorney
Cassady.Adams@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:21-cr-00269-SI-1 |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| ANDREW GONZALEZ-SHERIFF, | |
| Defendant. | |

**Introduction**

This case is a tragedy. In December 2020, defendant Andrew Gonzalez-Sheriff sold

fentanyl to Aaron Edwards,[1] a twenty-year-old young man in Tigard, Oregon. Gonzalez-Sheriff

also facilitated the sale of cocaine to Aaron that night. Aaron consumed both drugs, and he

overdosed and died.

---

[1] The family of Aaron Edwards has given permission for the government to use his name in this
public court filing.

**Government's Sentencing Memorandum**                                                      **Page 1**

Gonzalez-Sheriff is now before the Court for sentencing, following the entry of a guilty plea to Count One of the indictment, distribution of fentanyl, 21 U.S.C. §§ 841(a)(1), (b)(1)(C). The United States recommends a sentence of 71 months custody, followed by three years of supervised release.

## Factual Background

### A. Aaron Edwards

This case is not only about Gonzalez-Sheriff's conduct: it is also about the young adult man who lost his life due to the drugs sold by Gonzalez-Sheriff. Aaron Edwards was twenty years old when he died. His mother's victim impact statement has been submitted separately, and she has provided this photograph of Aaron to share with the Court.



**Government's Sentencing Memorandum**                                    **Page 2**

Aaron's family misses him dearly. "There's an empty chair at holidays. A missing laugh in the room. A space in family photos that can never be filled. But the deepest ache comes when I watch my younger children grow up without ever knowing their brother. . . . Their relationship with Aaron exists only through my memories, my voice. And that is a grief I carry for them too." Victim Impact Statement at 1.

### B. The Offense Conduct

On December 23, 2020, the Tigard Police Department responded to a report of an overdose death of a victim (Aaron Edwards) at a residence in Washington County, Oregon. PSR ¶ 17. Upon arriving on scene, first responders found Aaron unresponsive, and Aaron's brother was performing CPR. *Id.* Medical personnel attempted to render aid to Aaron, but he was subsequently pronounced deceased. *Id.* The medical examiner determined that Aaron's cause of death was the combined toxic effects of fentanyl and cocaine. PSR ¶ 18.

**Cause/Manner of Death**

| Death Certificate Number | |
|---|---|
| COD/Circumstances | Drug Death-Mixed Drug Toxicity |
| COD Description | |

| Immediate cause | Interval (Onset to Death) |
|---|---|
| a. Combined toxic effects of fentanyl and cocaine | |

Aaron's brother reported that Aaron was a recovering drug user. PSR ¶ 19. Aaron's brother reported that he had last spoken to Aaron the previous night, and Aaron appeared to be fine. *Id.* The next morning, Aaron was unconscious in the living room. *Id.* Aaron's brother called 911 and performed CPR. *Id.*

During a search of the scene, officers recovered a small plastic baggie in Aaron's pocket with approximately 3.4 grams of cocaine. PSR ¶ 20. Additionally, they found a prescription

**Government's Sentencing Memorandum**                    **Page 3**

bottle with Xanax pills, a coin purse with two counterfeit M30 oxycodone pills containing fentanyl, and Aaron's cellphone. *Id.*

Investigators searched Aaron's cellphone, as well as Aaron's Snapchat account. PSR ¶ 21. They identified the defendant, Gonzalez-Sheriff, as the individual who provided drugs (fentanyl and cocaine) to Aaron prior to Aaron's overdose death. *Id.* Specifically, messages between Aaron and Gonzalez-Sheriff (using the Snapchat name "drudolla99") indicated that Aaron arranged for the purchase of counterfeit oxycodone pills containing fentanyl from Gonzalez-Sheriff on the night of December 22, 2020. *Id.*

On December 28, 2020, investigators conducted undercover communications with Gonzalez-Sheriff via Snapchat, in furtherance of the investigation. PSR ¶ 22. They arranged for the purchase of counterfeit oxycodone pills from Gonzalez-Sheriff, and agreed on a meeting location in Tigard, Oregon. *Id.*

At the prearranged time, investigators observed a vehicle arrive to the area with Gonzalez-Sheriff in the front passenger seat. PSR ¶ 22. Another individual was driving the car, and a 17-year-old was in the rear passenger seat. *Id.* Police contacted the vehicle, and all of the occupants were detained. *Id.*

A search of the vehicle revealed a total of approximately 74 counterfeit oxycodone pills (fentanyl), approximately 3.2 gross grams of cocaine, and a user amount of marijuana. PSR ¶ 23.[2]

---

[2] A firearm was also located in the vehicle, wedged between the driver's seat and the driver's door area. PSR ¶ 23. Based on the location of the firearm, it would have only been accessible to the driver of the vehicle. *Id.* Therefore, the government concurs with the presentence report that the dangerous weapon enhancement, USSG § 2D1.1(b)(1) does not apply in this case, as to Gonzalez-Sheriff. PSR ¶ 30.

**Government's Sentencing Memorandum**                                    **Page 4**

On August 3, 2021, a federal grand jury returned an indictment charging Gonzalez-Sheriff with distribution of fentanyl, 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and possession with intent to distribute fentanyl, 21 U.S.C. §§ 841(a)(1), (b)(1)(C). Gonzalez-Sheriff's co-defendant (identified to be a source of supply for fentanyl), Halo Cowan, was charged in the same indictment with possession with intent to distribute fentanyl, 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A)(i).[3]

Gonzalez-Sheriff was arrested on the federal arrest warrant in this case in another state in February 2024. PSR p. 1. Prior to being federally indicted, Gonzalez-Sheriff was arrested in Washington County on state charges on December 28, 2020, and he was released from state custody several days later. *Id.* There is no evidence that Gonzalez-Sheriff was aware of the federal arrest warrant in this case, due to the federal indictment being issued after he was released from state custody. However, Gonzalez-Sheriff was likely aware of his pending state matter at the time he moved to Minnesota, prior to his arrest on his federal indictment. PSR ¶ 44.

C. **The Plea Agreement & Guideline Computations**

On August 28, 2025, Gonzalez-Sheriff pleaded guilty to count one of the indictment, distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). PSR ¶ 1. As part of his

---

[3] On January 18, 2023, Halo Cowan was sentenced to 33 months custody and three years supervised release for possession with intent to distribute fentanyl in this case. ECF 64. The investigation was unable to prove that Cowan's conduct was also responsible for Aaron's overdose death, and therefore Cowan's sentence did not include an enhancement for the death. On January 24, 2024, Cowan's sentence was reduced to 30 months custody, pursuant to 18 U.S.C. § 3582(c)(2). ECF 71.

**Government's Sentencing Memorandum** **Page 5**

plea agreement, Gonzalez-Sheriff admitted that his distribution of controlled substances caused Aaron's overdose death. ECF 100, ¶ 5.

The presentence report has calculated Gonzalez-Sheriff's criminal history category as II. PSR ¶ 42. Gonzalez-Sheriff's base offense level is 14, pursuant to the plea agreement and presentence report. PSR ¶¶ 7, 29. Gonzalez-Sheriff has accepted responsibility in a timely manner, which results in a total offense level of 12. PSR ¶ 38.

Under the plea agreement, the parties stipulated to an upward variance under 18 U.S.C. § 3553(a) to account for Aaron's overdose death. ECF 100 at ¶ 10; PSR ¶ 10. The government recommends a sentence of 71 months' custody, to account for the overdose death. *Id.* This is an upward variance of approximately 12 levels under the sentencing guidelines, with a criminal history category II and a total offense level of 12. Gonzalez-Sheriff may argue for any lawful sentence. PSR ¶ 12.

## Argument

### A. 18 U.S.C. 3553(a) Sentencing Factors

There are general factors that district courts take into account in exercising their sentencing discretion. Specifically, 18 U.S.C. § 3553(a) directs courts, "in determining the particular sentence to be imposed," to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the need for the sentence imposed" to serve purposes of the criminal laws;

(3) "the kinds of sentences available;"

(4) "the kinds of sentence and the sentencing range" established by the guidelines;

(5) "any pertinent policy statement" issued by the Sentencing Commission;

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

(7) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

Many of the § 3553(a) factors warrant the sentence requested by the government in this case—71 months custody—including the nature and circumstances of the offense, and the need for the sentence imposed to serve the purposes of the criminal laws. Those purposes include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment . . . afford adequate deterrence . . . protect the public . . . ." and to provide needed education, training, treatment, and care to the defendant. 18 U.S.C. § 3553(a)(2).

### B. Analysis of Sentencing Factors

Andrew Gonzalez-Sheriff sold fentanyl (and facilitated the sale of cocaine) that caused Aaron's overdose death. Aaron lost his life because of these drugs, and his family will never get to see him again. Aaron's mother's victim impact statement explains this loss, stating in part:

> I still am at a loss for words most days. December 23, 2020 changed my life forever. Grief is being angry, numb, broken and everything in between. When you're grieving the loss of someone you grieve for what was, and what will never be. Grief takes a toll on your mental and physical health. It was forcing myself out of bed, to shower, or even eat. It was fear of leaving my house, and watching as the world was flying by around me while I was stuck in what felt like quicksand. Isolating myself from everyone so I did not have to see the "I'm sorry for your loss" look in their faces.

Victim Impact Statement at 1.

**Government's Sentencing Memorandum**                                    **Page 7**

Aaron's mother also described the visceral experience of selecting a casket or urn for her son. *Id.* Aaron's brother also misses him tremendously, and the victim impact statement describes the effect of this crime on Aaron's older brother, as well as how there is now an empty seat at the table on holidays and memories that Aaron will never have. *Id.*

Selling drugs was a bad decision by Gonzalez-Sheriff, and Aaron's family will still miss Aaron long after Gonzalez-Sheriff is done serving his sentence in this case.

The drugs that Gonzalez-Sheriff sold—namely, fentanyl—are dangerous and destructive. This case occurred in 2020, and that year, roughly 701 Oregonians died from a drug overdose. *Overdose Death Disparities in Oregon*, Oregon Health Authority, July 16, 2024, available at https://www.oregon.gov/oha/PH/PREVENTIONWELLNESS/SUBSTANCEUSE/OPIOIDS/Documents/Overdose%20Death%20Disparities%20in%20Oregon.pdf . That statistic jumped to 1,083 Oregonians in 2021, and 1,289 in 2022. *Id.* at 1. This increase in overdoses has been attributed to the availability and potency of illicit fentanyl, which increased in Oregon starting around 2019. *Id.* Aaron is one of many people whose lives were cut short as a result of this drug.

Gonzalez-Sheriff's history also weighs in favor of a 71-month custody sentence. This case is not his first encounter with the criminal justice system. He has a prior state conviction for attempted robbery I and assault III in 2015, for which he was sentenced to 48 months in prison and three years post-prison supervision. PSR ¶ 41. At the time of the crime in that prior case, Gonzalez-Sheriff was 16 years old. *Id.* The presentence report indicates that Gonzalez-Sheriff violated his supervision in 2018 by testing positive for cocaine and failing to make contact with his probation officer. *Id.*

**Government's Sentencing Memorandum**                                                    **Page 8**

Gonzalez-Sheriff's background contains mitigating information regarding his upbringing and challenges he has faced in his life, from an early age. PSR ¶¶ 48-49, 58. This does not excuse his serious conduct in this case, but it helps explain the circumstances that led him to commit this crime.

To his credit, Gonzalez-Sheriff agreed to plead guilty in a very timely manner and accepted responsibility in this case.

With his prior history on supervision, as well as his history of failing to appear for his previous court hearing and moving to Minnesota, Gonzalez-Sheriff will benefit from the full three years of supervised release in this case. This will also allow Gonzalez-Sheriff to receive any necessary treatment for issues that led to him committing these crimes.

The government's requested sentence of 71 months custody promotes respect for the law, provides just punishment, and affords adequate deterrence. It holds Gonzalez-Sheriff accountable for this very serious crime, which resulted in a death, while also recognizing the other factors set forth in 18 U.S.C. § 3553(a).

//

//

//

//

//

//

**Government's Sentencing Memorandum**                                                    **Page 9**

**Restitution**

Under the plea agreement, Gonzalez-Sheriff agreed to pay restitution to the victim in this case. PSR ¶ 13. No restitution has been requested at this time.

**Conclusion**

Based on the foregoing, the government recommends the Court impose a sentence of 71 months custody, followed by a three-year term of supervised release, and a $100 fee assessment.

Dated: April 22, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/*Cassady A. Adams*
CASSADY A. ADAMS, CO Bar #48807
Assistant United States Attorney